IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ESTATE OF JOSEPH DANIEL MALDONADO, et al.,
        Plaintiff(s),

vs.                                        2:06CV02696-MCE/GGH

SECRETARY OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,

        Defendants.                  ORDER
_____/

        Previously pending on this court's law and motion calendar for November 15, 2007, was plaintiffs' motion to compel production of documents from non-party California Office of the Inspector General ("OIG") pursuant to a subpoena duces tecum. Both OIG and defendants filed an opposition to which plaintiffs filed a reply. Stewart Katz appeared for plaintiffs. Barbara Sheldon appeared for non-party OIG. Monica Anderson appeared for defendants. After hearing, the court issued a summary order granting the motion to compel. This explanatory order follows.

BACKGROUND

        Plaintiffs are the family of Joseph Maldonado, an eighteen year old former juvenile ward at Chaderjian Youth Correctional Facility in Stockton, who committed suicide on

1

August 31, 2005 while in custody there. The complaint alleges that the suicide was caused by Maldonado having been subjected to 24 hour lockdown for a continuous eight week period. Plaintiffs' claim is brought under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs, failure to train/supervise, constitutionally defective policies/procedures, and failure to summon/provide medical aid. The instant dispute concerns plaintiffs' efforts to obtain a report issued by OIG concerning an investigation into the circumstances of Maldonado's death.

The report at issue was released to the public on December 29, 2005, and is not confidential or internal. The subpoena seeks all supporting documents upon which the report is based. OIG objected, claiming confidentiality and privilege pursuant to Cal. Penal Code §§ 6126.3(c) and 6126.4, and that the documents can only be released by a juvenile court judge, but that they are available in any event to a parent or guardian of the ward under Cal. Wel. & Instit. Code § 827(a)(D). OIG has produced a privilege log for the documents.

DISCUSSION

Plaintiffs categorize the withheld documents into six categories: "(1) witness interviews/statements and lists; (2) logs/entries and other incident-specific records (including the Pajaro Hall DVD, #19); (3) OIG generated investigatory documents such as timelines of the incident; (4) report drafts; (5) correspondences; and (6) other Maldonado-related records."

OIG and defendants acknowledge that state law does not apply in federal court; however, they urge the court to consider that these juvenile documents are highly confidential and cannot be disclosed under state law except pursuant to an order by a juvenile court judge. In addition, they assert other state law protections such as privacy of peace officer personnel records, official information privilege, and privacy under the California Constitution. They further argue that plaintiffs should obtain the documents directly from the source, the California Department of Corrections and Rehabilitation ("CDCR").

No one disputes that the documents requested are relevant. They pertain to an investigation of the precise incident at issue. Whether the documents should be protected based

on privacy or other concerns requires a balancing of interests under federal law.

### I. General Standards

Federal law applies to privilege based discovery disputes involving federal claims, even if allied with by pendent state law claims.  See, e.g., Pagano v. Oroville Hospital, 145 F.R.D. 683, 687 (E.D.Cal. 1993); Martinez v. City of Stockton, 132 F.R.D. 677, 681-83 (E.D.Cal. 1990).  Privileges are narrowly construed, because they impede the full and fair discovery of the truth.  Eureka Financial Corp. v. Hartford Acc. and Indemnity Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991).  Further, the party asserting a privilege has the burden to establish that it applies.  See, e.g., United States v. O'Neill, 619 F.2d 222, 227 (3rd Cir. 1980).

The Supreme Court has reemphasized that privileges are not favored:

> The common-law principles underlying the recognition of testimonial privileges can be stated simply.  "'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence.  When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'"

Jaffee v. Redmond, 518 U.S. 1, 9, 116 S. Ct. 1923, 1927 (1996) (citing United States v. Bryan, 339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (quoting 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940)); see also Maricopa Audubon Soc. v. U.S.F.S., 108 F.3d 1082, 1085-86 (9th Cir. 1997).

In cases presenting 42 U.S.C. § 1983 civil rights claims concurrently with state law claims, courts disagree about the extent to which state privilege law remains applicable in discovery disputes. The Supreme Court explicitly noted in Jaffee that the issue is unsettled. Jaffe, 518 U.S. at 15 n.15, 116 S. Ct. at 1931 n.15 (noting disagreement concerning the proper rule in cases in which both federal and state claims are asserted in federal court.)  This court has found that in mixed federal and state claim cases, although federal law is ultimately binding, state privilege law which is consistent with its federal equivalent significantly assists in applying

privilege law to discovery disputes.  See Pagano; Martinez; Cook v. Yellow Freight, 132 F.R.D. 548 (E.D. Cal. 1990).  Other courts, however, disagree.  See, e.g., Jackson v. County of Sacramento, 175 F.R.D. 653, 654 (E.D. Cal. 1997) (stating that Pagano/Martinez/Cook have been overruled);[1]

This court considers state law in mixed federal/state claims.  See Pagano.  While federal law is controlling, id. at 687, state law is nevertheless relevant, especially in mixed claims where one of the elements of the federal claim is that a *state* actor was acting under color of *state* law when the federal right was violated – a category which includes every 42 U.S.C. § 1983 action.[2]  It has been the policy of this court, "when state privilege law is consistent, or at least compatible, with federal privilege law," to read the two together "in order to accommodate the legitimate expectations of the state's citizens."  Id. at 688; accord Martinez, 132 F.R.D. at 681 ("application of state rules [is appropriate] when that application would not be inconsistent with federal law"); but see Folb v. Motion Picture Industry Pension & Health Plans, 16 F. Supp.2d 1164, 1170 (C.D. Cal., 1998) (refusing to consider state privilege law); Jackson, 175 F.R.D. 653, 654 (E.D. Cal. 1997) (same).  Several reasons justify this policy.  First, as previously noted, the Supreme Court explicitly noted in Jaffe that the matter is unsettled.

---

[1]  Jackson is, respectfully, simply wrong in its proposition that Jaffe overruled Pagano, Martinez, and Cook.  For starters, the cases were not referenced by Jaffe.  More importantly, Jaffe itself expressly noted the disagreement on the extent to which federal privilege law was informed by its state law counterpart, and expressly held that it would not rule on the issue.  "We note that there is disagreement concerning the proper rule in cases such as this in which both federal and state claims are asserted in federal court and relevant evidence would be privileged under state law but not under federal law....we express no opinion on the matter."  Jaffe, 518 U.S. at 15 (n.15), 116 S. Ct. at 1931.  Jackson is based on the questionable premise that the Supreme Court's determination not to consider an issue impliedly overrules cases discussing the issue.  The cases that have followed Jackson's erroneous interpretation of Jaffe, seemingly without reference to footnote 15 in Jaffe, are likewise flawed in this respect.  See Folb v. Motion Picture Indus. Etc., 16 F. Supp. 2d 1164 (C.D. Cal. 1998); Humphreys v. Regents of University of Cal., 2006 WL 335275 (N.D. Cal. 2006).

[2]  Those who interpret the trilogy of Pagano, Martinez, and Cook as standing for the proposition that state privilege law is ultimately controlling in mixed claim situations have misread the cases.

1        Second, not only this court, but others as well, use state law to assist in defining
2 the parameters of federal privilege.  See, e.g., Memorial Hospital etc. v. Shadur, 664 F.2d 1058,
3 1061 (7th Cir. 1981); Hysell v. Pliler, 2007 WL 273882 *1 (E.D. Cal. 2007); Gottleib v. Wiles,
4 143 F.R.D. 235, 237 (D.Colo. 1992); Wei v. Bodner, 127 F.R.D. 91, 94-95 (D.N.J. 1989); Unger
5 v. Cohen, 125 F.R.D. 67, 69 (S.D.N.Y. 1989); Lora v. Board of Education, 74 F.R.D. 565
6 (E.D.N.Y. 1977).
7        Third, federal courts frequently look to state law for guidance in § 1983 lawsuits.
8 Indeed, the Supreme Court has recognized:

> In 42 U.S.C. § 1988, Congress 'quite clearly instructs [federal
> courts] to refer to state statutes' when federal law provides no rule
> of decision for actions brought under § 1983 . . . . [B]y its terms,
> §1988 authorizes federal courts to disregard an otherwise
> applicable state rule of law only if the state law is 'inconsistent
> with the Constitution and laws of the United States.'

Board of Regents, etc v. Tomanio, 446 U.S. 478, 484-85, 100 S. Ct. 1790, 1795 (1980) (citations
omitted).

       Further, the Court has acknowledged:

> This statutory reliance on state law obviously means that there will
> not be nation-wide uniformity on these issues [contemplated by
> §1988].

Robertson v. Wegmann, 436 U.S. 584, 594 (n.11), 98 S. Ct. 1991, 1997 (1978).  See also Moor
v. County of Alameda, 411 U.S. 693, 701-702, 93 S. Ct. 1785, 1791-1792 (1973) (§ 1988 does
not permit wholesale incorporation of state causes of action, but state law may supplement
established federal law).  The preceding Supreme Court cases, while not directly on-point with
the privilege issues presented by this discovery motion, nevertheless stand as strong authority for
the principle that application of state law is not foreign to § 1983 jurisprudence.  Lower court
cases such as Kelly, concluding "[i]t would make no sense to permit state law to determine what
evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to
protect citizens from abuses of power by state and local authorities," Kelly v. City of Stockton,

114 F.R.D. 653, 656 (N.D. Cal. 1987), assuming such cases advocate no role for state law, fail to consider congressional intent that state law play an important, and at times dispositive, role in § 1983 litigation.[3]

Fourth, recognition of important state interests which do not conflict with federal law is a bedrock principle of our federal system. "Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state laws." Maryland v. Louisiana, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128 (1981) (preemption case). While it is at times necessary to flex the federal muscle when federal and state law conflict, such flexing should be done only as a last resort. While preemption is not the issue here, there is no reason to ignore basic principles of federalism in applying privilege law.

Finally, this entire action, including the federal § 1983 claim, could have been brought in state court.[4] The state court would apply state privilege law. In addition, in a federal court civil rights case in which the federal claims drop out, it is not beyond the pale to have a case in which supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, is exercised over only state claims. In such cases, only state privileges seemingly would apply. Thus, in mixed claim cases where federal and state privileges are consistent, federal cases which fail to consider state privilege law run an unnecessary risk of creating ad hoc, or varyingly stated, privilege standards, depending on whether the lawsuit is brought in state or federal court, or whether federal claims ultimately survive.[5]

---

[3] While the notion of national uniformity in federal practice, assuming that such is possible, is a worthy goal for which to strive in the usual situation, Congress was less concerned with national uniformity in setting up the civil rights statutory provisions of § 1981 et seq. than it was with the usurpation of state law where such was not necessary.

[4] Federal courts have original, but not exclusive, jurisdiction over § 1983 claims pursuant to 28 U.S.C. § 1343; thus, state courts are fully authorized to hear §1983 claims. Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411 (1980).

[5] Cf. Menses v. U.S. Postal Service, 942 F. Supp. 1320, 1322 (D. Nev. 1996) (since Federal Tort Claims Act cases can be brought only in federal court, there is a need for national uniformity in rules of evidence, and no corresponding need to apply state privilege law even

The inevitable question is – if the state and federal privileges at issue are consistent, why not simply apply federal privilege law? As discussed in Pagano, the point of considering state law as a guide is not to determine whether a specific privilege exists, but to determine how to perform the "balancing" that most privilege determinations, state or federal, require. Judges frequently are tempted to create multi-pronged tests for deciding federal common law privilege issues, born from individual creativity (and sometimes from the myopia of having considered the issues in particular cases). In contrast, similar state privileges frequently are codified privileges which have received the attention and consideration of the peoples' representatives in the respective legislatures, including competing considerations of any balancing applicable to those privileges. In terms of setting policy, the wisdom of the collective legislature is generally greater than the wisdom of particular judges. Our system of government is based on this premise. Moreover, the standards set forth by the legislature are generally more structured and more specific, and therefore provide a uniform starting point for any analysis. Therefore, it makes little sense to avoid using as a guidepost, standards the legislature has already provided.

For all of the above reasons, in deciding whether privilege should preclude disclosure of documents in a civil rights case, this court will continue to consider applicable state statutes establishing policy and criteria for disclosure. Jackson, supra and its progeny are incorrect in their premise that the undersigned's cases have been overruled, and respectfully, incorrect in their substance.

\\\\\
\\\\\
\\\\\
\\\\\

---

though the substance of the claims is decided by reference to the state law).

II. <u>Analysis</u>[6]

As a preliminary matter, OIG argues that the documents in question were obtained by the OIG from the CDCR in its oversight capacity, and therefore plaintiffs should go directly to the CDCR to obtain them. OIG further contends that guardians and parents of the deceased ward may obtain the documents under § 827(a)(D). The problem is that plaintiffs seek only the documents forming the basis of OIG's report, and no other source can provide such information. Further, OIG conducted an independent investigation with its own interviews.

    A. <u>Confidentiality of Juvenile Records under Cal. Welf. & Instit. Code § 827</u>

Both OIG and defendants argue that the court should consider as persuasive California Welfare and Institutions Code § 827 which requires a juvenile court order for disclosure of this otherwise protected information.[7]

This court has previously analyzed the applicability of this California statute in the context of a federal question case. See <u>Townzen v. County of El Dorado, et al.</u>, Civ. No. S-91-1220 WBS GGH (E.D. Cal. Order June 22, 1994). In summary, the court found that the California statute could not purport to bind the federal courts. However, the court also found that the privilege advanced by the state statute was a strong one, and that unless the state law was

---

[6] OIG has not raised sovereign immunity as a basis for precluding enforcement of the subpoena. Therefore, the court is not required to consider it, despite Judge England's previous ruling in a similar case which found that the Eleventh Amendment barred plaintiffs from compelling the State to produce certain discovery. <u>Estate of Manuel A. Gonzalez, Jr. v. Hickman</u>, MC 06-0095 MCE GGH (Order, filed December 21, 2006). See <u>Hill v. Blind Industries and Services of Maryland</u>, 179 F.3d 754, 756, *amended on denial of rehearing*, 201 F.3d 1186 (9th Cir. 1999) (holding that party waived Eleventh Amendment immunity by not raising it until trial, and noting that unless raised by the State, the court need not address it).

[7] California's Welfare and Institutions Code provides that any documents within the jurisdiction of the juvenile court shall not be disseminated to anyone unauthorized by the statute to have access to them. Cal. Welf. & Inst. Code § 827(a). It also provides that such documents may not be made attachments to other documents without prior approval of the presiding judge of the juvenile court. <u>Id</u>. It appears that this statute was amended shortly after plaintiffs filed their motion to compel and *inter alia*, provides for "a presumption in favor of release of documents when a child is deceased unless the statutory reasons for confidentiality are shown to exist," and if the child has died, "no weighing or balancing of the interests of those other than a child is permitted." <u>Id</u>., § 827(a)(1)(2)(B)(C) (amended October 11, 2007).

8

inconsistent with federal law on the subject, comity required that the state law be respected if at all possible given the needs of this case. Section 827 was not found to be inconsistent with federal law, and the court applied an analysis weighing the needs of the case versus the state interest in keeping the juvenile information confidential.

The sine qua non for application of the analysis is a requirement that the information sought be significantly relevant to the issues in the case. The less significant the information, the more likely the court will keep the information confidential. Assuming significant relevancy, "[t]he court considers the following factors in determining the scope of protection to be accorded in the privacy context: (1) the probable encroachment of the individual's privacy right if the contested action is allowed to proceed, and the magnitude of that encroachment; (2) whether the encroachment of the privacy right would impact an area that has traditionally been off limits for most regulation [i.e., an area where privacy concerns have traditionally been respected]; (3) whether the desired information is available from other sources with less encroachment of the privacy right; (4) the extent to which the exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the interests of society at large encourage a need for the proposed encroachment." Pagano v. Oroville Hospital, 145 F.R.D. 683, 698-699 (E.D. Cal. 1993).

Under the standards set forth above, Cal. Welf. & Instit. Code § 827 is consistent with federal law, especially in light of its recent amendments. Most of the aforementioned factors weigh in favor of disclosure of the requested documents. Importantly, as set forth below, discovery of the documents underlying the OIG report are significantly relevant.

Although the privacy rights of juveniles have traditionally been strongly protected, there is no encroachment on Joseph Maldonado's privacy rights as he is deceased. Further, the requested information is not readily available elsewhere as the OIG represented at hearing that it conducted its own interviews close to the time of the incident. To the extent that the privacy of any other wards, officers or third parties is at risk, this information will not be disclosed outside

this case and will be subject to a stipulated protective order which will serve to protect the privacy of these individuals as much as possible.

In support of the fourth factor is that the protection of these documents will actually result in an impingement of this ward's rights as his family's case brought to vindicate his rights will perversely be adversely impacted if the documents are not disclosed. Additionally, the potential for problematic treatment of wards, i.e. 24 hour lockdown for extended periods, in this Juvenile Hall has necessarily been divulged through plaintiff's allegations. Disclosure of ward statements may aid in protecting other wards by alerting the officials of the Juvenile Hall to the need for change in the manner in which wards are handled.

The fifth factor, society's interest, is strong here. Society has a right to be made aware of the manner in which juvenile offenders are controlled, and the way that their guards are treated. It is important that the process run in an efficient manner, while continuing to protect the rights of all parties involved.

Therefore, § 827 would not prevent disclosure of the requested relevant material, and informs the ultimate determination of the federal privilege. See below.

B. Governmental Privileges

The federal privilege applicable to the government interest in preserving confidentiality of law enforcement records has various names: (1) the "official information privilege," Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1991) (employment discrimination case which raised only federal claims); (2) the "law enforcement privilege," In re Department of Investigation of City of New York, 856 F.2d 481, 483-84 (2d Cir. 1988) (applying privilege to protect investigative agency with dual criminal and civil functions); Morrissey v. City of New York, 171 F.R.D. 85, 90 (S.D.N.Y. 1997) (finding, with guidance from state law enforcement privilege, that law enforcement privilege is somewhat narrower than official information privilege); and (3) a type of "executive privilege," Siegfried v. City of Easton, 146 F.R.D. 98, 101 (E.D. Pa. 1992). The federal privileges are based on the following rationale:

> The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

In re Dept. of Investigation, 856 F.2d at 484.

This federal "qualified" governmental privilege is consistent with California statutes according a qualified privilege to peace officer personnel records.[8] Cal. Penal Code § 832.7.[9] Disclosure requires "good cause" (Cal. Evid. Code §1043),[10] relevance, and unavailability by other means (Cal. Evid. Code §1045). [11]

---

[8] OIG cites Cal. Evid. Code § 1040 regarding the official information privilege; however, the discussion will focus on the federal counterpart and more pertinent state statutes.

[9] Cal. Penal Code § 832.7 provides in part:

(a) Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code.

[10] Cal. Evidence Code § 1043 provides in part:

(a)   In any case in which discovery or disclosure is sought of peace custodial officer personnel records . . . the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body. . .
(b)   The motion shall include . . . (3) Affidavits showing good cause for the discovery or disclosure sought ...

Cal. Evid. Code § 1046 requires the party alleging excessive force who seeks disclosure to include a copy of the police report setting forth the circumstances under which the party was stopped and arrested.  Such procedural nuances of asserting privilege in state court, including who must assert the privilege, how it must be asserted, or who bears the burden of establishing the privilege or its exception do not concern the court.  Rather, the substantive disclosure criteria and the strength of the state's interest in preventing disclosure, as demonstrated by the statutes, are the matters of concern.

[11] Cal. Evid. Code § 1045 provides:
(a) Nothing in this article shall be construed to affect the right of access to *records of complaints, or investigations of complaints,* or discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer or custodial officer

11

The California statutes codifying the governmental privilege balance the need for disclosure with the government's legitimate need to acquire and maintain confidential information for sensitive activities.  See County of Los Angeles v. Superior Court, 18 Cal. App. 4th 588, 22 Cal. Rptr. 2d 409 (1993); People v. Superior Court for County of Sacramento, 19 Cal. App. 3d 522, 97 Cal. Rptr. 118 (1971).  As these cases demonstrate, the California Legislature understood quite well the need for some secrecy in government affairs, and was

---

> ... participated, or which he or she perceived, and *pertaining to the manner in which he or she performed his or her duties, provided that information is relevant* to the subject matter involved in the pending litigation.
>
> (b) In determining relevance the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure:
>
> (1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought.
>
> (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code.
>
> (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit.
>
> (c) In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records.

(emphasis added.)

The undersigned has found the proviso of § 1045 that information will be deemed per se irrelevant if it includes "complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation," too rigid to comport with federal law, in which "remoteness" is a matter generally weighed in determining the relevance of particular information.  "[T]he overall balancing provisions contained within [Fed. R. Civ. P.] 26(b) [dictate that] . . . [t]he court must carefully assess the request for discovery in light of . . . the remoteness of sought discovery to the issues in the case." Martinez, 132 F.R.D. at 682.  That analysis is confirmed.

aware that permitting unrestricted disclosure might chill the ability of government officials to obtain candid, confidential information from persons otherwise reluctant to become involved or influenced by interests of self-preservation. It is critical to note that Cal. Evid. Code § 1045 strikes the state balance in favor of disclosing internal investigations pertaining to the manner in which a peace officer performed his or her duties, *so long as they are relevant* to pending litigation. Accordingly, relevance is the dispositive factor in directing disclosure of internal affairs investigations, and the same reasoning applies to similar investigations by an oversight body such as the OIG.[12]

In addition to its claims of privilege under these various state laws, OIG argues that it is subject to misdemeanor charges as the custodian if it releases these records without a court order under Cal. Penal Code § 6126.4. The analysis here is similar to that undertaken in regard to § 827; the relevance of the requested information outweighs a qualified privilege. Under the Pagano analysis outlined in the previous section, the documents are not protected.

### C. Individual Privileges

OIG also claims a right of privacy for other wards and officers under the California Constitution. The CDCR and DJJ, as custodians of their employees' personnel records, have standing to assert their employees' privacy rights. Cook v. Yellow Freight System, Inc., 132 F.R.D. 548, 551, n. 2 (E.D. Cal.1990). However, as this court has previously concluded, "the compelling interest analysis, as applied to complex privacy issues, is overly restricting" in the discovery context. Rather, certain factors must be considered. Pagano, 145 F.R.D. at 698-699. The court has already analyzed these non-party privacy rights, and the protective order should serve to remedy any concern in this regard. To the extent that OIG and/or defendants continue to contend that documents to be disclosed will not be sufficiently protected

---

[12] Internal affairs investigations are "investigations of complaints" covered by Cal. Evid. Code § 1045. See City of Fresno v. Superior Court, 205 Cal. App. 3d 1459, 253 Cal. Rptr. 296 (1988).

by a protective order, and that privacy, safety and /or security concerns will be compromised by disclosure, the parties shall submit to the court a narrowed request for *in camera* review.

CONCLUSION

For the reasons stated in this opinion, IT IS ORDERED that:

1. Plaintiffs' motion to compel production of documents, filed October 9, 2007, is granted.

2. OIG shall produce all requested discovery by November 30, 2007. Production may take place pursuant to a stipulated protective order.

3. If OIG has any documents for which it seeks in camera review, it may present them to the court by November 26, 2007.

DATED: 11/30/07                                    /s/ Gregory G. Hollows

                                                   GREGORY G. HOLLOWS
                                                   U. S. MAGISTRATE JUDGE

GGH:076
Maldonado2696.sbp.wpd